**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: June 24 2013**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-31259 |
| | ) | |
| Barbara A. Caffey, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION FOR RELIEF FROM STAY AND ABANDONMENT

This case is before the court for final evidentiary hearing on June 6, 2013, on the amended Motion of Jag AutoCare, LLC, for Relief from Stay and Abandonment ("Motion") [Doc. # 11], and Debtor's response [Doc. # 12]. Debtor's counsel and counsel for Jag AutoCare, LLC ("Creditor") appeared in person, and the parties had the opportunity to, and did, present testimony and evidence in support of their respective positions. Creditor's Motion is brought with respect to Debtor's 2004 Ford Escape that it repossessed the day before this case was commenced.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings involving relief from the automatic stay and abandonment of property of the estate are core proceedings that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(A), (G), and

(O). For the reasons that follow, the court will deny Creditor's Motion as moot since the stay has terminated by operation of law and Debtor's vehicle is no longer property of the estate.

## FACTUAL BACKGROUND

Debtor owns a 2004 Ford Escape that was taken to Creditor on or about April 11, 2012, for repairs. There is no dispute that Debtor agreed to repairs consisting of replacing the engine in the vehicle at a cost of $2,500.00 for the engine and $910.00 for labor. And there is no dispute that Creditor called Debtor regarding additional problems with the vehicle discovered during the engine replacement and that Debtor went to Creditor's place of business and was shown what additional repairs were needed. Debtor testified that she was given a written estimate of the cost of the additional repairs.

There is no dispute that the additional repairs were in fact completed by Creditor on May 8, 2012. The cost of the engine replacement and the additional repairs totals $6,965.10. Although Debtor testified that she did not authorize those additional repairs, the court does not find her testimony credible. Debtor had paid Creditor $2,500.00 as a downpayment on April 12, 2012, and an additional $1,000.00 on May 9, 2012, when she picked up the vehicle. She had, thus, paid in full for the engine replacement that she states was the only repair that she authorized. Nevertheless, she continued making payments to Creditor in the amounts of $100.00 on June 29, 2012, $500.00 on July 9, 2012, and $109.75 on October 5, 2012, [*see* Debtor's Ex. 1], and she turned over to Creditor the title to the Ford Escape after the additional repairs were completed and, according to Debtor, after Creditor demanded the title as collateral for the balance owed. Debtor also returned to Creditor on June 11, 2012, for an oil change on her vehicle. The court finds that Debtor's conduct belies her testimony as to any dispute with Creditor regarding the repairs done and, specifically, that she did not authorize the additional repairs.

A "Loan Agreement" dated June 1, 2012, that includes Debtor's notarized signature, provides in its entirety as follows;

> This loan is made by JAG AutoCare, LLC. to Barbara A. Caffey of 1004 Maple Ave. Sandusky, Ohio 44870 for auto repair made on her 2004 Ford Escape VIN # 1FMYUO2144DA10490.
>
> Balance due for said auto repairs is $3,465.10 plus interest and filing fees of $25. Said balance is to be paid in full by September 15, 2012, with first payment being made by June 15, 2012.
>
> A lien is hereby placed on the above mentioned vehicle until loan is paid in full.

[Cr. Ex. C]. The court credits the testimony of Creditor's principal, James Gunn, that Debtor signed the

Loan Agreement in his office at Creditor's place of business in Sandusky, Ohio. Debtor's testimony that she did not sign it and did not know that Creditor would hold a security interest in her vehicle is not credible, especially in light of the fact that she turned the title to the vehicle over to Creditor as collateral for the balance owed. It is undisputed, however, that Debtor had possession of her vehicle, that all work on her vehicle had been completed, and that Creditor provided no additional consideration in connection with the Loan Agreement at the time the Agreement was signed. On September 17, 2012, Creditor caused a new title to be issued showing it as a first lienholder, [Cr. Ex. A], and then provided Debtor an abstract of the new title.

On March 28, 2013, Creditor repossessed Debtor's Ford Escape for nonpayment of the debt owed. Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 29, 2013. [Doc. # 1]. She shows the debt owed to Creditor as an unsecured debt on Schedule F in the amount of $4,500.00. [*Id.* at 26/39]. Significantly, she did not schedule the debt to Creditor as being disputed. [*Id.*]. Debtor's Statement of Intention filed with her petition is blank, thus showing her intended treatment for no secured debt. [*Id.* at 37/39]. Creditor filed the instant Motion for Relief from Stay and Abandonment on April 9, 2013.

## LAW AND ANALYSIS

A statutory automatic stay arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). A stay is imposed under § 362(a)(3) against any act "to exercise control over property of the estate" and under § 362(a)(4) against "any act to . . . enforce any lien against property of the estate." Although Creditor had repossessed Debtor's vehicle the day before this case was commenced, the vehicle was property of the bankruptcy estate at the time of filing. 11 U.S.C. § 541(a)(1); *United States v. Whiting*, 462 U.S. 198, 203 (1983).

However, § 362 also provides that the stay is terminated under certain circumstances. Specifically, § 362(h) provides in relevant part as follows:

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)–
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an

> agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property . . . .
>
> (2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

Section 521(a)(2) requires a debtor whose "schedule of assets and liabilities includes debts which are secured by property of the estate" to file a statement of her intention with respect to the retention or surrender of such property and if retaining the property, with respect to whether the debtor intends to redeem the property or reaffirm the debt secured by the property "within thirty days after the date of the filing of a Chapter 7 petition or on or before the date of the meeting of creditors, whichever is earlier." 11 U.S.C. § 521(a)(2)(A).

Debtor filed her Chapter 7 petition on March 29, 2013, and the date of the meeting of creditors was not until May 13, 2013. Thus, the applicable time in this case for filing a Statement of Intention required under § 521(a)(2) expired on April 29, 2013, which was the first non-weekend day falling 30 days after Debtor filed her petition. *See* Fed. R. Bankr. P. 9006(a)(1)(C). The Statement of Intention filed by Debtor with her petition does not state her intention with respect to her Ford Escape, and the Trustee did not seek a determination that the vehicle was of consequential value or benefit to the estate. Consequently, if the vehicle secures a debt owed to Creditor, that is, if Creditor holds a valid security interest in the vehicle, under § 362(h), Debtor was required to file a statement of her intention thereto, failing which the automatic stay terminated on April 30, 2013, and the Ford Escape is no longer property of Debtor's bankruptcy estate.

However, Debtor argues that, even if she signed the Loan Agreement as the court has determined that she did, the agreement does not constitute a valid security agreement. According to Debtor, a valid security interest does not exist because (1) there is no evidence regarding when and where it was created; (2) the Loan Agreement is silent as to what law applies; (3) Creditor admits it gave no consideration at the time the Loan Agreement was executed; and (4) Creditor did not sign the Loan Agreement. The court finds that Debtor's arguments are without merit.

Initially, the court notes that the absence of a choice-of-law provision in a contract does not affect the validity of the contract. When a bankruptcy court interprets contracts, it applies a "significant contacts"

4

analysis to determine which state's law to apply where the contract does not contain a choice-of-law provision. *Rieser v. Baudendistel (In re Buckeye Countrymark, Inc.)*, 251 B.R. 835, 838 (Bankr. S.D. Ohio 2000).[1] A significant contacts analysis in this case reveals that Ohio law provides the applicable law. Contrary to Debtor's argument, the evidence shows that Debtor lives in Ohio and Creditor's place of business is in Sandusky, Ohio, the Loan Agreement was entered into at Creditor's place of business, and the subject matter of the Loan Agreement, i.e., Debtor's vehicle, is located in Ohio. *See Gries Sports Enter., Inc. v. Modell*, 15 Ohio St.3d 284 syllabus (Ohio 1984) (contacts to be taken into account include place of contracting, place of performance, location of the subject matter of the contract and the parties' residence, and place of business); *Enter. Group Planning, Inc. v. Falba*, No. 94–3827, 1995 WL 764117, *2, 1995 U.S. App. LEXIS 38844, *5-6 (6th Cir. Dec. 27, 1995). The court will, therefore, apply Ohio law in determining the validity of the security agreement in issue.

Ohio Revised Code § 1309.203(B) provides in relevant part as follows:

[A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(1) Value has been given;

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) One of the following conditions is met:

    (a) The debtor has authenticated a security agreement that provides a description of the collateral. . . .

There is no dispute that, as owner of the Ford Escape, Debtor had the power to transfer rights in the vehicle to Creditor. And although Debtor argues that no value was given by Creditor at the time the Loan Agreement was signed, under Ohio law, a person gives value for rights if the person acquires them as

---

[1] In *Reiser,* the court noted:

> Since bankruptcy jurisdiction arises under federal statutory law rather than by diversity, forum state choice of law rules are not required. However, because both federal common law and Ohio choice of law rules mandate a most significant contacts or relationship test, this court need not choose between the two.

*Reiser*, 251 B.R. at 839, n.3. (citing *Enter. Group Planning, Inc. v. Falba,* No. 94–3827, 1995 WL 764117, at *2 (6th Cir. Dec. 27, 1995) (employing a "significant contacts" test under federal choice of law principles derived from federal common law); *Gries Sports Enter., Inc. v. Modell,* 15 Ohio St.3d 284, 287(1984) (noting that in the absence of a choice of law provision in a contract, the court should use the law of the state that bears the most significant relationship to the contract)).

security for a preexisting claim, as Creditor did in this case. Ohio Rev. Code §§ 1301.204(B) & 1301.102.

As to the third standard for enforceability, "security agreement" is defined as "an agreement that creates or provides for a security interest." Ohio Rev. Code § 1309.102(A)(74). The court has determined as a mater of fact, contrary to Debtor's assertions, that she did agree with Creditor with respect to placing a lien on her 2004 Ford Escape. Under the Ohio Uniform Commercial Code, a "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Ohio. Rev. Code § 1301.201(B)(35). The Loan Agreement clearly indicates an intention to grant a lien, which is an interest, in personal property, specifically Debtor's 2004 Ford Escape, to secure repayment of the preexisting balance due for repairs. In turn, "authenticate" means "to sign." Ohio Rev. Code § 1309.102(A)(7). The court has determined that Debtor did sign the Loan Agreement. Debtor thus "authenticated" the Loan Agreement. Authentication under § 1309.203(B)(3) requires "compliance with an evidentiary requirement in the nature of a statute of frauds." U.C.C. § 9-203, Official Comment 3; Ohio Rev. Code § 1309.101. The statute of frauds is an evidentiary safeguard that requires certain agreements to be in writing and signed by the party to be charged therewith. *See* Ohio Rev. Code § 1335.05; *Huntington Nat'l Bank v. Antrobius*, 983 N.E.2d 932, 940 (Ohio App. 2012). There is no requirement that both parties sign the agreement as argued by Debtor. Lastly, the Loan Agreement includes an adequate description of the collateral as it includes the make, model and vehicle identification number of the Ford Escape. And while the Loan Agreement lacks terms one is accustomed to seeing in more formal security agreements drafted by trained professionals, such as a description of what constitutes an event of default, for example, the omissions argued by Debtor are not required under the applicable provisions of the Ohio Uniform Commercial Code to create an enforceable security interest in personal property.

Finding that the requirements of § 1309.203(B) are satisfied with respect to the Loan Agreement, the court further finds that Creditor holds a valid, enforceable security interest in Debtor's Ford Escape. As such, the court finds that Debtor was required to file a statement of her intention with respect to the Ford Escape within the time prescribed by § 521(a)(2). The court so finds notwithstanding the fact that she included the debt owed to Creditor as an unsecured debt on Schedule F of her bankruptcy schedules listing creditors holding unsecured nonpriority claims and not on Schedule D listing creditors holding secured claims. Under the plain meaning of the statute, Debtor's schedules of assets and liabilities include a debt

6

13-31259-maw    Doc 26    FILED 06/24/13    ENTERED 06/24/13 16:27:55    Page 6 of 7

which is secured by property of the estate, specifically the 2004 Ford Escape.[2] To find otherwise would, in the court's view, enable debtors to manipulate their schedules contrary to the both the letter and the purpose of the applicable Bankruptcy Code provisions so as to achieve a result to which they are not entitled by Congress. *Cf. Comprehensive Accounting Corp. v. Pearson (In re Pearson),* 773 F.2d 751, 756 (6th Cir. 1985) (stating in § 109(e) eligibility analysis that court should rely primarily on debtor's schedules, checking only to see if the schedules were made in good faith); *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir. 1998) ("A debtor cannot change the nature of the debt by failing to list it in his petition and schedules."); *In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007) (citing *In re Pearson*, and stating that the court may look to other evidence in determining a debtor's eligibility under § 109(e) "when it appears a debtor did not exercise reasonable diligence or good faith in completing and filing the schedules"). Having failed to timely file her statement of intention, pursuant to § 362(h), the automatic stay terminated by operation of the statute on April 30, 2013, and the Ford Escape is no longer property of Debtor's bankruptcy estate. Thus Creditor does not now require relief from the automatic stay or abandonment to enforce its *in rem* rights in and against the Ford Escape. The Motion is moot.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Motion of Jag AutoCare, LLC, for Relief from Stay and Abandonment [Doc. # 11] be, and hereby is, **DENIED as moot.**

###

---

[2]The security interest is not a secret lien of which Debtor was unaware. Even disputing at the hearing that she had knowingly signed the Loan Agreement, Debtor nevertheless admitted in her testimony that she was aware of the lien on the title in favor of Creditor in December 2012 or January 2013 when she tried to sell the vehicle. Moreover, Creditor filed its Motion asserting the security interest on April 9, 2013, and its Amended Motion with a copy of the Loan Agreement and title attached as exhibits as required by local rule on April 23, 2013, both before the April 29, 2013, deadline for filing a statement of intention. The proper treatment of the debt on her schedules was this to list it on Schedule D and mark it as disputed.